John Phillip ZANNARAS, J. P. Robinson, Jr., and U. S. Tungsten Corporation, Appellants,

v.

BAGDAD COPPER CORPORATION, a corporation, Appellee.

No. 16742.

United States Court of Appeals Ninth Circuit.

Nov. 17, 1960.

John P. Zannaras, in pro. per.

J. P. Robinson, Jr., in pro. per. Joseph L. Alioto, San Francisco, Cal. (G. Joseph

Bertain, Jr., San Francisco, Cal., of counsel), for appellant.

Snell & Wilmer, Phoenix, Ariz., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and MURRAY, District Judge.

BARNES, Circuit Judge.

This unusual dispute has been going on for at least twelve years. This is its third appearance in this court. In August of 1958 this court reversed a judgment below, and remanded the matter to the district court. Jurisdiction of this appeal rests on 28 U.S.C. § 1291.

Appellants are Zannaras and Robinson, individually, and U. S. Tungsten Corporation, a corporation, of which the two individuals are owners and officers. Appellants will be herein sometimes referred to as Zannaras. Zannaras is the owner of a water certificate which entitles him to the beneficial use of three million gallons of water a year of water taken from Burro Creek, Arizona. Appellant Zannaras has a mill on Burro Creek, which is at a location difficult of access, and which has been operated infrequently since it was erected in the early nineteen forties. Bagdad Copper Corporation, a corporation (sometimes herein referred to as Bagdad or appellee), has a water certificate entitling it to three hundred and fifteen million gallons of water a year to be taken from Burro Creek. Its diversion point is upstream from Zannaras', but Bagdad's taking is junior in time to Zannaras'. Bagdad is a large copper company which runs a company town of some 1600 residents, and produces large amounts of copper. It is the principal taxpayer in Yavapai County, Arizona.

In about 1945, Zannaras sued Bagdad for polluting the stream with its "tail water," and obtained an injunction against such pollution. Bagdad was forced to build a pond to retain its tailings, which it did, and also instituted procedures for reclaiming the tailing water from the pond for re-use.

On July 12, 1948, Zannaras filed suit against Bagdad seeking damages and injunctive relief. After trial, judgment and costs were ordered for defendant Bagdad, and the trial court retained jurisdiction "for further orders should the same be deemed necessary in the future, in justice and equity properly to conserve and protect the rights of respective parties hereto." Such judgment was entered on January 2, 1951.

There is considerable doubt as to whether this purported retention of jurisdiction was proper. However, the parties assumed it was, and on February 8, 1951, Zannaras filed a petition for relief under the earlier decree retaining jurisdiction. This asked for relief which Bagdad states was purely injunctive in nature.[1] The case was tried along with a separate action which had meantime been instituted by Bagdad against Zannaras seeking to cancel Zannaras' water certificate on the grounds of non-use and fraud. Judgment was entered for Zannaras in the certificate cancellation suit, and Bagdad appealed to this court. The judgment upholding the validity of Zannaras' water certificate was affirmed by this court. Bagdad Copper Corporation v. Zannaras, 9 Cir., 1956, 229 F.2d 920.[2] This action is sometimes referred to by the parties as Prescott Cause 221.

Meanwhile Judge Ling took the "petition for relief" (in Prescott Cause 221)

---

1. This petition sought to restrain Bagdad from pumping, recited there was no plain, speedy, or adequate remedy at law, and requested the court to exercise its equity power, and prayed only for injunctive relief.

 A motion to make it more definite and certain was filed by Bagdad. An amended petition for relief was then filed, on March 28, 1951, which likewise prayed the court to look into the matter of al-

leged unlawful taking; "enter such judgment as shall appear just and proper * * *;" enjoin the defendant from interfering with plaintiffs' water rights and depriving them of their necessary water; and "such other and further relief as shall be just and equitable." Thus nowhere in either petition were damages specifically prayed for.

2. Number 14248 in this court.

under submission after taking additional evidence. In 1957 Judge Ling entered judgment on this petition for relief, that plaintiff (Zannaras) take nothing. The ground for this decision was that Zannaras, the senior downstream appropriator, had failed to prove that he was damaged by the activities of Bagdad, the junior upstream appropriator.[3] Zannaras appealed to this court, and the decision was reversed and remanded on the ground that the burden of proof to show no damage was on the junior upstream appropriator, and that this burden of proof had not been met. Zannaras v. Bagdad Copper Corporation, 9 Cir., 1958, 260 F.2d 575.[4]

After the remand to the district court, Zannaras disqualified both Judge Ling and Judge Walsh of the United States District Court for the District of Arizona, and Judge Mathes of the United States District Court for the Southern District of California was assigned to the case. Zannaras insisted that the case not be reopened, for he claimed that everything save remedy had been decided in his favor by the court of appeals' mandate. Zannaras filed a motion for entry of judgment, and for determination of damages. Bagdad moved for the appointment of a water master. Zannaras objected. Zannaras moved to amend the complaint to permit recovery of exemplary damages. Bagdad objected. It was then stipulated that Judge Mathes "might familiarize himself with the entire record, the same as if he had tried the case." He was not to draw conclusions nor make findings, but to rely on the mandate of the court of appeals for the law of the case. This was to avoid the duplication of a complete new trial. A number of hearings were held to try and settle the form of decree. Both sides filed voluminous affidavits, many of which would seem to have no connection with the proceedings, but are part of the record on this appeal.

Eventually Judge Mathes handed down a decree which enjoined Bagdad from diverting water in such a way as to interfere with Zannaras' rights to take his three million gallons. Zannaras (U. S. Tungsten) is ordered to inform Bagdad when it intends to commence using water, and when it intends to cease using water, so that Bagdad may insure the flow of water to Zannaras' lower diversion point. U. S. Tungsten is further ordered to file with the court each month a report stating how much water was used in the preceding month.

Apparently Zannaras and Robinson were dropped as parties plaintiff. We cannot find such an order in the record, though a motion to that effect was made, opposed, taken under advisement, and submitted. It must be inferred from the final judgment that such an order was made, the court coming to the conclusion that "damages was no longer an issue in the action." U. S. Tungsten is throughout the judgment referred to as the plaintiff, although the phrase "plaintiffs" is likewise used.

On this appeal Zannaras objects to the form of the injunction ordered, the failure to assess damages, and the dismissal of himself and Robinson as parties.

In discussing findings the district court should make, Zannaras asked the court to insert a provision for a future trial on the issue of damages. Paragraph III of Zannaras' proposed decree was:

"III. Plaintiffs are entitled to a further trial on the sole issue of the amount of damages to which they are entitled under their complaint, and the court retains jurisdiction for that purpose."

Judge Mathes declined to include such language in the judgment. He retained

---

3. "The evidence submitted is not sufficient to enable the Court to find as a fact that during critical months of the year, even if Bagdad ceased its pumping operations, that water would reach the Zannaras point of diversion * * *." (Prescott Cause 221.) And see, Zannaras v. Bagdad Copper Corporation, 260 F.2d 575, 577, n. 3.

4. Number 15640 in this court; Prescott Cause 221.

equitable jurisdiction only "for the purpose of enforcing * * * modifying or supplementing the foregoing injunctive provisions of this decree."

The judgment and decree then provided:

"Plaintiffs having offered no evidence as to either fact or amount of damage in the record on which this judgment is predicated, plaintiffs' claim to some award of damages herein is denied for lack of any evidence to sustain any award of damages."

We are not called upon to determine whether the pleadings before the court required a finding on the issue of damages. Zannaras urges damages was an issue; Bagdad claims that issue was missing from both the original and the amended petition for relief.

We find no offer of proof of damages before Judge Ling. When the amended petition was heard, he made no findings nor reference to damages either in his original decree of January 2, 1951, or his later final opinion, or the judgment of April 17, 1957. There was no appeal in Appeal No. 15640 on the issue of damages; nowhere in the twenty-two alleged errors in that case was damages mentioned; nowhere in the twenty-two "Concise Statements of Points on Appeal" in appellants' brief was damages mentioned. Nowhere in the eighty-one page appellants' brief, or the forty-three page reply brief, was there any mention of damages except in subparagraph (f) of paragraph 7 on the next to last page of appellants' brief. Nowhere does the opinion of this court in Zannaras v. Bagdad Copper Corporation, supra, (No. 15640) mention damages.

We can assume, however, for purposes of this opinion, that Judge Mathes felt damages *were* in issue, inasmuch as he found there were none.

 The court below found there was no evidence as to either *fact* or *amount* of damages in the record. Inasmuch as Zannaras had requested, after trial, a retention of jurisdiction so that such an issue could be explored *in future*, we assume Zannaras agrees that the issue of damages had not *then* been explored at the trial. There being no evidence of damages, either in fact or amount, the district court could not find damage, and the judgment of the district court is not clearly erroneous, and cannot be disturbed by us. Unlike the previous appeal, where we held the burden of proof as to sufficiency of the water and the effect of the taking was wrongfully placed by the district court on Zannaras, here the burden of proof as to damages is unquestionably on the persons seeking them.

We can find no support for appellants' principal position. Zannaras bases his argument on his notion that the reversal of a decree that "Plaintiff take nothing" means that the decree should read "plaintiff take everything." From this he asks all that could possibly be granted to anyone in this action, and in the previous actions, feeling that his victory on appeal entitled him to dictate terms to his defeated adversary.[5]

While the previous mandate of this court may not be crystal clear in its instructions to the lower court,[6] it of a certainty does not attempt to tell the district court what Zannaras is entitled to have other than a reversal. It requires the district court to determine what relief the winning party, Zannaras, is en--

---

5. The court below did not mince words in speaking of Zannaras' proposed findings and conclusions.

"[Plaintiffs [Zannaras] are not concerned with getting 3,000,000 gallons of water per year to their point of diversion; plaintiffs are concerned with getting Bagdad Copper Corporation into a position where plaintiffs can exact whatever price they desire from Bagdad by reason of the fortuitous circumstance that plaintiffs are below Bagdad's point of diversion with a minimal prior water right."

6. It states, after discussing the errors upon which the judgment was reversed, including the question of burden of proof erroneously placed on Zannaras: "Unfortunately, the judgment reads against Zannaras and in favor of Bagdad. Reversed."

titled to have.[7] This Judge Mathes proceeded to determine on the pleadings before him and the stipulation as to the evidence.

Zannaras would have Bagdad remove all its pumps from the stream but one, and restore the condition of the stream to the way it was when Bagdad perfected its water right back in the early nineteen forties. The requested relief includes the removal of the tailing pond which Bagdad built as a result of the injunction obtained by Zannaras against it. The damages now demanded are apparently based on the evidence taken back in the nineteen forties in a case in which recovery was denied, and in which judgment has become final. Zannaras' position here indicates his belief that the mandate of this court overturned the final judgment entered in 1951, for he asks for the return of the costs awarded against him in that action. Bagdad asserts that since that time there has been no relief requested nor proof adduced on the issue of damages. Such a statement by itself indicates the lack of merit in the position herein taken by Zannaras.

■ The propriety of the district court's judgment cannot be open to question. Zannaras had a right, but only a limited right, which he was seeking to protect. That was, and is, "a right to the waters of Burro Creek" upon certain lands situated in Mohave County and Yavapai County, Arizona, for mining, milling and domestic purposes, "limited to an amount actually beneficially used, * * * [which] shall not exceed Three Million (3,000,000) Gallons per annum." He has no rights beyond this which could possibly be protected, and no interest in what Bagdad does upstream so long as he (Zannaras) is able to make proper, adequate and beneficial use of his three million gallons. He is not entitled to have the water flow past his land unused, for this would encourage waste. He is entitled to use of the water, but only a beneficial use. Cf. Bagdad Copper Corporation v. Zannaras, supra, 229 F.2d at page 924.

■■ The burdens placed on Zannaras would seem to be reasonable, in view of the extremely sporadic operations he has conducted and the extent of Bagdad's operations. There exists a strong general policy in the arid Western States against wasting water. It would seem only reasonable that Bagdad should not be forced to let all the water go on down stream, unless Zannaras intends to, and can, use it. It is not too onerous a burden on Zannaras to require him to give notice of his desire and intent to use the water.

■ Some ˙ collateral problems are raised. Bagdad now doubts the power of the district court to retain jurisdiction of the suit after denying all relief. But this would seem to be foreclosed by its failure to object earlier.

■ The matter of the dismissal of the individual plaintiffs from the suit is, as we have seen, puzzling. If only injunctive relief is granted, there could be no prejudice resulting from dismissal of the individual plaintiffs. Their only interest was damages. Since the amended petition for relief did not pray for damages, and there was no testimony introduced on that subject, and no damages found, there can be no possible harm or prejudice in the dismissal. If error, it was harmless.

There are other collateral fact questions unresolved, involving the nature of some wells Cyprus Mines Corporation has drilled (Zannaras contending that these wells are diverting water from Burro Creek), and the relationship between Cyprus and Bagdad is disputed. There is a problem dealing with an alleged diversion of water by Bagdad to the benefit of a cattle ranch. And, there is controversy as to the effect of the operation of Hillside Mining & Milling Corporation on Warm Spring Creek, where they have drilled wells in close proximity to Warm Spring. There seems to be an issue involving the change in the character of

---

7. Nowhere in Judge Fee's decision (260 F. 2d 575) does he refer to damages. He deals solely with Zannaras' right to an injunction.

the Burro Creek by reason of a change in plant growth in the creek bed, Bagdad asserting that during the dry season water would not reach Zannaras even if Bagdad ceased pumping entirely. But such issues are not properly presented on this appeal.

The judgment is eminently proper, is supported by the findings, there was no error, and we Affirm.