**K–MART CORPORATION,**
Plaintiff, Appellee,

v.

**ORIENTAL PLAZA, INC.,**
Defendant, Appellant.

No. 88–1984.

United States Court of Appeals,
First Circuit.

Heard March 2, 1989.

Decided May 10, 1989.

Walter H. Muniz with whom Gerardo A. Carlo, Carlo & Dubos, Old San Juan, P.R., Eldia M. Diaz Olmo and Rodriguez–Ramon, Pena & Diaz, Hato Rey, P.R., were on brief, for defendant, appellant.

Jorge I. Peirats with whom Edward M. Borges and O'Neill & Borges, Hato Rey, P.R., were on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

Concerned that its landlord's word was somewhat shy of its bond, plaintiff-appellee K–Mart Corporation (K–Mart),[1] a tenant at the Oriental Plaza Shopping Center (the Center) in Humacao, Puerto Rico, brought suit in federal district court against the Center's owner, defendant-appellee Oriental Plaza, Inc. (OPI). K–Mart asserted that OPI had perpetrated a breach of the lease

---

* Of the District of Massachusetts, sitting by designation.

1. Variety is said to be the spice of life—but, like all good things, it can be carried to extremes. K–Mart's corporate name appears in the record in a bewildering assortment of variations: all capitals, two capitals, one capital, hyphenated, unhyphenated, etc. To dispel unnecessary confusion, we (like the district court) have arbitrarily settled upon the configuration indicated above.

agreement (the Lease) between the two corporations. At the bottom line, the question presented on appeal is whether the court below erred in ordering mandatory injunctive relief in plaintiff's favor. Seeing nothing amiss, we affirm.

## I. SITE PREPARATION

The parties entered into the Lease on September 21, 1983. During the negotiations, both sides were concerned with possible future construction of retail space in areas of the Center reserved for parking. The Lease resolved these concerns by the inclusion of two key covenants: OPI would build no more than 10,000 sq. ft. of retail space in the parking area north of K–Mart's store (*i.e.*, between its premises and the neighboring Pueblo Supermarket), and any such new construction would not deviate from an agreed site plan (Exhibit B of the Lease) without K–Mart's express written consent. The Lease provided in pertinent part that:

\* \* \* \* \* \*

**8. Parking and Other Common Areas**

8.1 ... The layout of ... the Common Area, as depicted on Exhibit B shall not be changed without Tenant's consent.

\* \* \* \* \* \*

**9. Landlord's Representations and Warranties**

9.1 ... Landlord further covenants that it will not erect hereafter any buildings or other structures [in the Center] except as shown on Exhibit B. ...

\* \* \* \* \* \*

**42. Entire Agreement**

This lease contains the entire agreement between the parties and cannot be changed, modified or amended unless such change, modification or amendment is in writing and executed by the party against which the enforcement of the change, modification or amendment is sought.

In February 1986, OPI wrote to K–Mart's real estate department in Troy, Michigan seeking approval of a contemplated development of retail space in the parking area. The plan was at variance with the Lease and the landlord requested "a letter from K–Mart acknowledging the acceptance of these facilities." K–Mart wrote back, refusing to acquiesce. In April, OPI tried again. It submitted a second revised site plan to K–Mart, which differed from the Lease's requirements only in relatively minor respects (*e.g.*, the addition of an entrance at the northern boundary of the Center, re-siting of the proposed new construction to an area further from K–Mart's store). K–Mart sent OPI a letter approving this plan. But, the government, through the Planning Board, turned thumbs down and the design was never implemented.

In December 1986, Oriental sent yet a fourth site plan to K–Mart. The layout involved something entirely new—a proposed 1,200 sq. ft. structure labelled "Bank," circled in red by the landlord and depicted in the Center's northwest corner. The sketch also showed three other retail buildings which were nonconforming in two respects: they were located closer to K–Mart's store, and aggregated more square footage, than permitted by the Lease. The cover letter accompanying the proffer directed K–Mart's attention exclusively to the proposed bank building and parking layout, noting that "[v]isibility is the same with exposure unaffected from all sides." No mention was made of the retail buildings shown on the site plan. Plaintiff wrote OPI that the plan had been forwarded to its in-house design division. At the same time, plaintiff forewarned that approval of the bank location would be contingent upon its receipt of 50% of the rental receipts from that development. The correspondence did not mention the other retail space depicted on the drawing. No agreement was reached anent rental receipts and the bank was never constructed.

On March 20, 1988, without seeking or receiving K–Mart's blessing, construction got underway on three retail buildings in the parking area. Although not apparent at the time, these structures turned out to be similar to the ones depicted on the December 1986 site plan. The combined square footage (10,800 sq. ft.) exceeded the

maximum allowed under the Lease (10,000 sq. ft.). Moreover, the project deviated from Exhibit B (and from the site plan which plaintiff had approved in April 1986) in another respect; the new buildings extended southerly to a point substantially closer to K–Mart's store than was allowable under the Lease and shrunk the available parking. The two structures located furthest from K–Mart's premises were to be owned by third parties, Caribbean Restaurants, Inc. (Carib) and South American Restaurants Corp. (SARC), under land-lease agreements; Carib and SARC each desired to operate a fast-food restaurant on the site. OPI erected the third building on speculation, that is, in the expectation of securing a suitable tenant.

It was not until some eleven weeks had elapsed that K–Mart, on June 13, objected to the development as inconsistent both with the Lease and the April 1986 site plan. At this point, the two northernmost structures (the restaurants) were at least 80% complete and the southernmost structure was approximately 42% complete. OPI refused to halt the construction and K–Mart, invoking diversity jurisdiction, initiated this suit.

## II. LAYING THE FOUNDATION

K–Mart's verified complaint and motion for preliminary injunction were docketed on June 22, 1988. The complaint asserted that the development violated the Lease and harmed plaintiff in that parking near its store would be reduced; traffic congestion would be increased; plaintiff's store and signage would be obstructed; and in the bargain, the chances of impulse shopping were lessened. The complaint requested variegated relief, equitable and legal. OPI, fighting fire with fire, responded by moving to dismiss the action for failure to join indispensable parties, viz., Carib and SARC. The district court refused to grant the motion, instead scheduling a prompt hearing on preliminary injunction. The hearing began on July 8. When plaintiff rested, the district court on its own initiative consolidated the preliminary injunction with the merits. Neither party objected. Defendant then presented its case. The hearing ended on July 13 and the district court took matters under advisement.

A written decision was soon issued. *K–Mart Corp. v. Oriental Plaza, Inc.*, 694 F.Supp. 1010 (D.P.R.1988). The court held that defendant had breached the Lease. *Id.* at 1015. It concluded that injunctive relief was merited, *id.* at 1015–17, emphasizing that "K–Mart cannot recoup, even through legal damages, the injury to its goodwill caused by the visual obstruction of its store." *Id.* at 1016. In settling upon remediation, the court ordered OPI to raze the southernmost structure under construction and to replace it with no fewer than 30 parking spaces within 60 days. *Id.* at 1017–18. The court allowed completion of the two restaurant buildings, but permanently enjoined further development in the parking area except in strict compliance with the Lease. *Id.* at 1018. When OPI appealed, the district court stayed the operation of the mandatory injunctive relief previously ordered.

## III. FRAMEWORK OF THE APPEAL

OPI, striving mightily to get out from under the burden imposed by the district court, has given us several blueprints charting routes of egress. In appellant's view, these comprise a series of independently sufficient ways in which it can be extricated from the yoke of the judgment below. Only three of these approaches warrant discussion.

### A. *Doing Equity.*

Arguing the venerable maxim that "he who seeks equity must do equity," appellant asserts that K–Mart was guilty of laches, should be equitably estopped from maintenance of the action, and came to court with unclean hands. We think the maxim admirable, but do not believe that the precept is of much comfort to OPI in the circumstances at bar.

1. *Laches/Estoppel.* Because defendant's claims of laches and equitable estoppel derive from a common nucleus of operative fact, we treat them in the ensemble.

██ The equitable doctrine of laches bars assertion of a claim where a party's delay in bringing suit was 1) unreasonable, and 2) resulted in prejudice to the opposing party. *Puerto Rican–American Ins. Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 283 (1st Cir.1987). As a matter of federal civil procedure, laches is an affirmative defense. *See* Fed.R.Civ.P. 8(c). When a plaintiff brings suit within the limitation period,[2] a defendant claiming laches has the burden of proving both unreasonableness of the delay and the occurrence of prejudice. The district court found that OPI failed to carry the devoir of persuasion. *K–Mart Corp.*, 694 F.Supp. at 1017. We review that determination only for abuse of discretion. *See Puerto Rican–American Ins. Co.*, 829 F.2d at 283 ("application of the [laches] doctrine is within the 'sound discretion' of the district court"); *Park County Resource Council, Inc. v. United States Dept. of Agriculture*, 817 F.2d 609, 617 (10th Cir.1987); *Benoit v. Panthaky*, 780 F.2d 336, 339 (3d Cir.1985).

In this case, the laches defense pivots off OPI's contention that plaintiff was aware of the construction for well over a year before it voiced any objection. This thesis depends upon whether defendant's December 1986 submission was enough to put K–Mart on notice of what ensued some 15 months later. The district court found that the December 1986 site plan did not accurately depict the construction actually undertaken by OPI in 1988. *K–Mart Corp.*, 694 F.Supp. at 1017. The court pointed in particular to a 1,400 sq. ft. discrepancy in the size of the southernmost structure, and a consequent diminution of the distance between it and plaintiff's store. *Id.* We conclude that this finding is not clearly erroneous. Whatever other interpretations might be put on the documentary evidence, the inferences drawn by the trial judge seem plausible. They must, therefore, be upheld on appeal. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evi-

dence, the factfinder's choice between them cannot be clearly erroneous.").

██ What is more, given the clear, explicit terms of the Lease, *see supra* Part I, amendment by acquiescence should not lightly be inferred. *Cf. Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 856 (1st Cir.1987) (where "the transaction is commercial, the principals practiced and represented by counsel, and the contract itself reasonably clear, it is far wiser for a court to honor the parties' words than to imply other and further promises out of thin air"). It is evident from the serial correspondence between the litigants that OPI was aware of its obligation to seek express approval of material changes. It never received such approval with regard to the December 1986 submission. OPI's letter of December 29 referred only to a redesign of the parking area (leaving intact the requisite number of parking spaces) and the addition of the bank; no reference at all was made to the increased square footage of the retail structures or their changed location. In light of the landlord's focus on the proposed bank building, not the retail strip, when it submitted the sketch, it would be manifestly unfair to imply the tenant's assent to construction of the latter. A party seeking to invoke the aid of equity should not be encouraged to call the other party's attention to his left hand, while surreptitiously pocketing the family jewels with the right hand. For these reasons, K–Mart's failure to tender an express objection to the retail strip incidentally depicted on the December plan was not fatal. If OPI relied on plaintiff's silence as acquiescence, such reliance was unreasonable. *See Bennett v. Tucker*, 827 F.2d 63, 69 (7th Cir.1987) (before honoring laches defense, court must be persuaded that defendant reasonably relied on plaintiff's conduct).

██ Nor did laches inevitably come into play by reason of K–Mart's alleged sluggishness in suing. After all, plaintiff had agreed in the Lease itself to some construction in the parking area. It had also ap-

---

2. In this case, plaintiff sued for breach of the Lease. The limitation period for contract claims under Puerto Rico law is fifteen years. P.R. Laws Ann. tit. 31, § 5294 (1968).

proved a revised site plan in April 1986. As defendant well knew, K–Mart's real estate and design departments were located far from Humacao (in Troy, Michigan). OPI had sent the various site plans and approval requests there. Given the need to let the construction develop somewhat before its illegality became apparent, and the problems inherent in absentee supervision, it is not unreasonable that there would be some delay between commencement of construction and the tenant's discovery that the construction did not conform to approved plans. We cannot say as a matter of law that eleven weeks was overly long, especially since doubts in this regard are best resolved in favor of the explicit provisions of the Lease and against the party having the burden of proving the delay to be unreasonable. The district court's decision to reject OPI's laches defense was within the parameters of its sound discretion.

■■■ Defendant's claim of equitable estoppel arises from the same facts and meets the same fate. Equitable estoppel requires proof of 1) a material misrepresentation by the party to be charged; 2) reasonable reliance thereon by the opposing party; and 3) disadvantage resulting therefrom. *Falcone v. Pierce*, 864 F.2d 226, 228 (1st Cir.1988). The party asserting the estoppel has the burden of proving it. *Clauson v. Smith*, 823 F.2d 660, 663 (1st Cir. 1987). Given the unambiguous terms of the Lease and the facts just recited, the district court's conclusion that there was no sufficient basis for equitable estoppel appears easily supportable.

■■■ 2. *Unclean Hands.* Defendant's claim that K–Mart acted in such bad faith such that equitable relief should be barred need not occupy us for long. OPI theorized that plaintiff's conduct—sitting by, letting construction progress, and then bringing suit—was a quasi-extortionate ploy designed to force the landlord to share rental receipts from the retail development. To support this theory, defendant adverted to negotiations over the bank building, the prayers for relief contained in K–Mart's complaint (one of which sought damages

equal to 50% of the gross income from the offending structures), and a failed settlement offer. This was argumentation, pure and simple, long on conjecture and short on provable fact.

"The maxim of 'he who comes into equity must come with clean hands' of necessity gives wide range to a court's use of 'discretion to withhold punishment of behavior which it considers not to warrant so severe a sanction.' " *Codex Corp. v. Milgro Elec. Corp.*, 717 F.2d 622, 633 (1st Cir.1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984) (quoting *Norton Co. v. Carborundum Co.*, 530 F.2d 435, 442 (1st Cir.1976)). In this instance, the district court apparently chose not to buy the grim interpretation which defendant was hawking, but to put a happier face on things. Overruling the "unclean hands" defense, even without comment, cannot be deemed an abuse of discretion on this record.

### B. *Claimed Procedural Errors.*

OPI contends that the district court committed a trio of procedural mistakes. These involve: 1) nonjoinder (comprising misjoinder), 2) improper consolidation of the preliminary injunction hearing with trial on the merits, and 3) impermissible interference with defendant's right to a jury trial. We reject all three claims.

■■■ 1. *Nonjoinder.* OPI asserts that, because plaintiff's complaint sought an injunction ordering all three retail buildings to be razed, "complete relief" within the meaning of Fed.R.Civ.P. 19(a) could not be granted unless Carib and SARC were joined as parties. But, the point is moot.

Notwithstanding the prayers of the complaint, the district court limited the relief granted to the southernmost building (owned by OPI). The northeast and northwest structures, in which Carib and SARC, respectively, were interested, emerged unscathed. *See K–Mart Corp.*, 694 F.Supp. at 1017–18. Plaintiff has not cross-appealed from this ruling and OPI has made no showing whatever that its substantial rights vis-a-vis the southernmost building were cramped in any way by the absence of

the two restauranteurs. Thus, even if the failure to join Carib and SARC could be deemed error—a matter as to which we take no view—the error is of no moment. *See* Fed.R.Civ.P. 61 (court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"); *cf. Zannaras v. Bagdad Copper Corp.*, 284 F.2d 147, 149 (9th Cir.1960) (any error in dismissing individual plaintiffs from case was harmless since their only interest was in damages and the decision was confined to consideration of injunctive relief), *cert. denied*, 365 U.S. 818, 81 S.Ct. 700, 5 L.Ed.2d 696 (1961).

■ 2. *Consolidation.* We start with the pertinent language from the applicable Civil Rule:

> Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

Fed.R.Civ.P. 65(a)(2). It is apodictic that the district court's power in this regard "must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2950 at 486 (1973). The Court has held as much, *see University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981), and our prior cases are in accord. *See, e.g., Santiago v. Corparacion de Renovacion Urbana, Etc.*, 453 F.2d 794, 797–98 (1st Cir.1972); *T.M.T. Trailer Ferry, Inc. v. Union de Tronquistas, P.R. Local 901*, 453 F.2d 1171, 1172 (1st Cir.1971).

In this instance, the district court announced its intention to consolidate preliminary injunction with the merits during the second day of the hearing. The judge asked whether there were any objections to the consolidation. OPI neither objected nor, at this critical juncture, requested a continuance to allow further discovery or more intensive preparation. When consolidation was ordered, defendant had not yet begun to present its case. And, a lay-by day intervened between the court's order and the last day of trial.

In view of OPI's silence in the face of the court's "clear and unambiguous" statement of intent to consolidate, *Camenisch*, 451 U.S. at 395, 101 S.Ct. at 1834, and its neglect to request more time at that point, OPI cannot now rightfully complain about the court's order. *See Channel Home Centers v. Grossman*, 795 F.2d 291, 298 (3d Cir.1986) (appellant waived argument concerning technical defect under Rule 65(a)(2) by not asking the court for leave to take discovery or for additional time); *Fenstermacher v. Philadelphia Nat'l Bank*, 493 F.2d 333, 337 (3d Cir.1974) (appellant waived objection to timeliness of notice by failing to object to district court's consolidation order). As we have recently written in an analogous context:

> ... [W]hen a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles.

*Reilly v. United States*, 863 F.2d 149, 160 (1st Cir.1988).

The cases on which appellant relies for a contrary proposition are uniformly inapposite. We discuss but two of them. In *Woe by Woe v. Cuomo*, 801 F.2d 627, 629 (2d Cir.1986), the district court made only "oblique references" to consolidation; appellants were unaware during the hearing that the merits of the case would be decided and presented no witnesses. Under those straitened circumstances, "the district court acted prematurely when it granted permanent relief." *Id. T.M.T. Trailer Ferry, supra*, is cut from much the same cloth. There, we reversed the district court's dismissal of the complaint where plaintiff had not been told, until after its case was completed, that the merits were to be decided along with the preliminary injunction motion. In contrast to the foregoing cases, the court below clearly notified K–Mart and OPI that it would decide the merits as well as the question of pre-

liminary relief, gave the parties ample opportunity to object to that procedure, and did not inhibit appellant's presentation of its case.

There was no due process violation here. Notice was given and the opportunity to be heard was ample. If defendant feels cheated, it should redirect its gaze inward. As we have said before in other settings, "the law ministers to the vigilant not to those who sleep upon perceptible rights." *Puleio v. Vose*, 830 F.2d 1197, 1203 (1st Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988). A party cannot lay back, acquiesce in the merger of a preliminary hearing with a permanent one, and then protest the procedure for the first time after the case is decided adversely to it.

3. *Right to Jury Trial.* Appellant professes that it was deprived of its right to a jury trial, but we see neither deprivation nor entitlement. In the first place, OPI never demanded a jury trial. Fed.R.Civ.P. 38(b). Nor did it object to going forward without empanelment. That, it seems, should be the end of the matter. *See* Fed.R.Civ.P. 38(d) (failure to serve jury demand constitutes waiver of trial by jury); Fed.R.Civ.P. 39(b) ("[i]ssues not demanded for trial by jury ... shall be tried by the court"). Moreover, "[i]n the absence of extraordinary circumstances, none of which are apparent here, we have regularly declined to consider points which were not seasonably advanced below." *Clauson*, 823 F.2d at 666 (listing representative First Circuit cases); *see also Reilly*, 863 F.2d at 159; *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 896 (1st Cir.1988).

If we may be permitted an eschatochol of sorts, we also note that the district court dismissed plaintiff's claims for damages. *K–Mart Corp.*, 694 F.Supp. at 1018. OPI appeals solely from the court's granting of injunctive relief, wholly equitable in nature. It is well established that "there is no right to a jury trial ... on a claim purely for injunctive relief (unless a statute were to expressly so provide, which is not the case)." *Rodriguez v. Munoz*, 808 F.2d 138, 142–43 (1st Cir.1986). *See also* 9 Wright & Miller, *supra,* § 2308 at 41. That being so, any deprivation in respect to jury intervention was harmless. The sole matter presently before us—the matter as to which appellant addresses its belated jury demand—is one on which no jury trial right inhered.[3]

### C. *Relief Awarded.*

Appellant's last line of defense is that, even if K–Mart was entitled to some relief, money damages would have been an adequate anodyne. Although the question may be arguable, we believe that the lower court acted within its proper province.

A district court may grant injunctive relief to a prevailing plaintiff to correct an injury which would, absent an injunction, be irreparable. The irreparability of the injury is of paramount concern. *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 143, 63 L.Ed. 354 (1919)). The necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies. The two are flip sides of the same coin: if money damages will fully alleviate harm, then the harm cannot be said to be irreparable.

Other factors also figure into the calculus of injunctive relief. In this circuit, the traditional test for *preliminary* injunctions is quadripartite. In addition to irreparability of injury, we consider likelihood of merits success; effect on the public interest; and the balance of "relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if

---

**3.** Unlike *Perez–Serrano v. DeLeon–Velez*, 868 F.2d 30 (1st Cir.1989), this is not a case where issues decided at the preliminary injunction hearing are common to ongoing claims for both injunctive relief and damages.

interim relief is withheld)...." *Aoude*, 862 F.2d at 892; *see also Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 699 & n. 2 (1st Cir.1987); *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981). Where, as here, *permanent* injunctive relief is involved, the test remains the same, with one important exception: the movant must show "actual success" on the merits of the claim, rather than a mere likelihood of such success. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987).

So long as these criteria are applied, the district court's assessment is due substantial respect. Decisions as to granting or withholding injunctive redress can best be made by trial courts steeped in the nuances of a case and mindful of the texture and scent of the evidence. Lacking the intimate familiarity that comes from seeing and hearing the witnesses, an appellate court should be slow to interfere with the trier's choice of a condign remedy. Once liability has been established, the party challenging issuance of an injunction bears a heavy burden of showing that the district court abused its considerable discretion. *See, e.g., Hypertherm*, 832 F.2d at 700; *Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986); *Camel Hair and Cashmere Institute v. Associated Dry Goods*, 799 F.2d 6, 12–13 (1st Cir.1986).

Here, the district court found OPI guilty of a breach of the Lease and found the harm to K–Mart from construction of the southernmost building irremediable. It stated that "K–Mart cannot recoup, even through legal damages, the injury to its goodwill caused by the visual obstruction of its store." *K–Mart Corp.*, 694 F.Supp. at 1016. The court went on to explain that the harm did not consist merely of lost sales (in themselves difficult to calculate and monetize), but also involved a detriment in "presentation of the store to the public," *id.*, detracting from the desired uniformity in appearance among K–Mart's stores across the nation. *Id.* These factual findings may not be inevitable, but they derive acceptable support from the record. The court below received photographic and testimonial evidence that the offending construction blocked public view of K–Mart's building from the highway, that it interfered with the store's "presence" (an item bargained for in the lease negotiations), that it lessened available parking, and that it interfered with both vehicular maneuverability and pedestrian safety.

Mindful of this evidence, we cannot say that the district court misused its discretion in determining that K–Mart suffered irreparable harm. "District courts have broad discretion to evaluate the irreparability of alleged harm and to make determinations regarding the propriety of injunctive relief." *Wagner v. Taylor*, 836 F.2d 566, 575–76 (D.C.Cir.1987). Real estate has long been thought unique, and thus, injuries to real estate interests frequently come within the ken of the chancellor. Then, too, harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found "irreparable." *See Camel Hair and Cashmere Institute*, 799 F.2d at 14–15 (affirming preliminary injunction against sale of mislabelled coats since "a lasting but not readily measurable injury can be inflicted on a product's reputation by the circulation of counterfeit ... products"). Beyond goodwill, the loss of revenues resulting from considerations such as diminished visibility, restricted access, less commodious parking, and the like are sufficiently problematic as to defy precise dollar quantification.

Nor can we overlook the question of duration. The initial term of the Lease was for 20 years, expiring on September 30, 2003. Beyond that term, plaintiff was entitled to exercise four successive 5-year option terms. Realistically, then, K–Mart might expect to occupy the premises well into the twenty-first century. The harm caused by the encroachment was continuing and would, absent equitable intervention, endure throughout the lengthy Lease. Such factors are of great importance on

hearing for permanent injunction. *See Walla Walla v. Walla Walla Water Co.,* 172 U.S. 1, 12, 19 S.Ct. 77, 82, 43 L.Ed. 341 (1898) (where "the damage be of such a nature that it cannot be adequately compensated by an action at law, or is such as, from its continuance, to occasion a constantly recurring grievance," injunctive relief is available); *Aoude,* 862 F.2d at 892 (discussing propriety of injunctive relief to curb continuing trespass). The evidence (including reasonable inferences therefrom) was sufficient to sustain a conclusion that mandatory injunctive relief was "essential in order effectually to protect [plaintiff's] property rights." *Romero–Barcelo,* 456 U.S. at 312, 102 S.Ct. at 1803.

Completion of the calculus does not require a contrary result. The district court carefully weighed the varying burdens imposed upon plaintiff and defendant. *K–Mart Corp.,* 694 F.Supp. at 1016. It likewise considered factors relating to the public interest. *Id.* at 1016–17. We choose not to repastinate that well-tilled soil. Because these findings are satisfactorily record-rooted, and because the district court was within its exercisable latitude in constructing the balance in that way, we ratify the findings without exegetic comment. We add only two remarks. First, OPI's loss, though considerable—its construction investment, the expense of razing the offending structure, diminution in rental receipts from the Center—did not so greatly overbalance the harm to plaintiff as to demand a different outcome. After all, appellant's wound, deep as it appears, was self-inflicted. Second, there is a strong public interest in fair dealing and the solemnity of contracts; if commerce is to function in our capitalistic system, entrepreneurs must play by the rules.

We need go no further. It would, we think, be counterproductive for us to secondguess the trial judge's reasoned assessment of the indigenous commercial realities of an idiosyncratic situation. Although we, if writing on a blank page, might have come to some other conclusion, we cannot say that the district court abused its broad discretion in finding the injuries stemming from OPI's egregious breach of the Lease to be irreparable, in identifying and balancing the factors which went into the calculus of injunctive relief, or in determining that the appropriate redress was by mandatory injunction.

## IV. THE FINISHED STRUCTURE

Having driven the last nail, we survey our handiwork. The decision constructed by the district court rests on a solid foundation. In this case, "[t]here were various permissible views of the proof—and it was the district judge's prerogative, indeed, his duty, to choose among them." *Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1027 (1st Cir.1988). The court fulfilled this duty in all respects: it determined, supportably, that OPI breached the Lease; rejected defendant's myriad excuses; and designed a remedy which, though stern, was within the universe of appropriate judicial responses, the circumstances considered. Appellate interference would be ultracrepidarian—and wrong.

Discerning no reversible error in the architecture of the trial court's remedial order, the judgment below is

*Affirmed.*