**NEW ENGLAND ANTI-VIVISECTION SOCIETY, INC., Plaintiff, Appellant,**

v.

**UNITED STATES SURGICAL CORPORATION, INC., Defendant, Appellee.**

**No. 89–1549.**

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1989.

Decided Nov. 27, 1989.

Rehearing Denied Jan. 16, 1990.

Steven M. Wise, with whom Fraser & Wise, P.C., Boston, Mass., was on brief, for plaintiff, appellant.

Sanford M. Litvack, with whom Dewey, Ballantine, Bushby, Palmer & Wood, Peter B. Ellis, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TIMBERS, Circuit Judge:

In this action to enjoin the holding of an annual meeting because of alleged false

* Of the Second Circuit, sitting by designation.

and misleading statements in a company's proxy materials, appellant, New England Anti–Vivisection Society, Inc. ("NEAVS"), appeals from a judgment entered April 24, 1989, in the District of Massachusetts, Douglas P. Woodlock, *District Judge,* which dismissed NEAVS' complaint, after a hearing on NEAVS' motion for a preliminary injunction was consolidated, pursuant to Fed.R.Civ.P. 65(a)(2), with a trial on the merits.

NEAVS' complaint alleged that a proxy statement issued by the United States Surgical Corporation ("the Company") contained false and misleading statements regarding a shareholders' resolution, in violation of Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a) (1988) ("1934 Act") and Rule 14a–9 promulgated thereunder, 17 C.F.R. § 240.14a–9 (1989). The district court after a bench trial entered judgment for the Company, finding nothing false or misleading about the proxy materials and, consequently, no violation of the federal securities laws.

On appeal, NEAVS asserts that we should review the case as though it were an appeal from a summary judgment, rather than from an order under Rule 65(a)(2). It also asserts that the district court applied the wrong legal standard to determine the sufficiency of the Company's statements in its proxy materials under Rule 14a–9 and 15 U.S.C. § 78n(a). It further asserts that the district court erred in refusing to strike the affidavit of Thomas R. Bremer, Vice–President and General Counsel of the Company.

We affirm.

### I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

United States Surgical Corporation, a New York corporation with its principal place of business in Norwalk, Connecticut, is engaged in the business of manufacturing and selling medical products, including devices for closing surgical wounds by stapling. From the time it began marketing its stapling products, the Company has used dogs for research purposes and to train physicians in the use of its products.

On November 14, 1988, NEAVS, a Massachusetts charitable corporation with its principal place of business in Boston, and Ms. Priscilla Feral ("Feral") submitted a shareholders' proposal for inclusion in the Company's proxy statement, to be acted upon at its May 2, 1989 annual shareholders meeting. The proposal sought a resolution that the Company should cease using dogs or other animals in its business and sales operations unless required by law. The resolution set forth a five paragraph preamble, which criticized the Company's use of dogs in its business and sales operations.[1]

On or about March 13, 1989, the Company mailed its proxy materials for the annual meeting and included the resolution exactly as submitted. The Board of Directors ("the Board") also set forth its objections to the resolution and its recommendation that the shareholders vote against it. At the May 2 annual meeting, more than 97% of the Company's stock voted to reject the proposed resolution.

---

1. The text of the resolution is as follows:
   "WHEREAS United States Surgical Corporation, the Company, uses more than a thousand dogs each year in stapling seminars in which the dogs are cut open, stapled, and killed by salesmen and others; and
   WHEREAS the Company purchases the dogs from animal dealers and cannot be certain that these animals are not lost, abandoned or stolen pets; and
   WHEREAS some of these animals may experience pain and suffering because of the Company's activities and all die as a result thereof; and

   WHEREAS this practice of using live dogs in sales demonstrations has resulted in expensive litigation and adverse publicity in the nation's media and has damaged the Company's public image and reputation; and
   WHEREAS alternatives to salespeople using live dogs to teach surgeons stapling techniques exist.
   BE IT RESOLVED, that the corporation and its agents, servants, and employees shall no longer use dogs or other animals in any of its business and sales operations, except and unless specifically required to do so by state or federal law."

NEAVS commenced the instant action on April 12, 1989, and filed a motion for preliminary and permanent injunctions to void all proxies the Company had received and would receive, to correct allegedly false and misleading statements in the proxy materials, and to continue the May 2 annual meeting until after the time a new proxy solicitation had been sent. The amended verified complaint and motion for a preliminary injunction alleged that the proxy statement issued by the Company contained false and misleading statements regarding the proposed resolution. NEAVS challenged the following statements made by the Board as false and misleading:

1. "The preamble of the resolution, which purports to be a factual rationale of the action to be taken, the Company believes is false throughout."

2. "Priscilla Feral for years has attempted by demonstrations, threats and misrepresentations to the media, to prohibit the Company's legal and essential use of live animal tissue (of approximately 1,000 animals per year)."

3. "Only the animal rights activists have attempted to damage the Company's image and reputation, and it is an unsupportable cynicism on their part to urge their own unsuccessful attempts as a basis for approving their proposal."

Specifically, NEAVS claimed that the statement that the preamble was "false throughout" itself was false and misleading because the preamble in fact was true; that the reference to Feral's past attempts to prohibit the Company's use of "live animal tissue" was false and misleading because the statement made it appear that what was at issue was not the use of the whole dog, but only a portion of the dog; and that the statement that "[o]nly the animal rights activists have attempted to damage the Company's image and reputation" was false and misleading because the Company itself, and not animal rights ac-

tivists, had caused damage to its image and reputation by its use of dogs.

On April 24, 1989, the district court held a hearing on NEAVS' motion for a preliminary injunction. At the outset of the hearing, the court asked counsel whether there was any objection to consolidating, pursuant to Rule 65(a)(2), the hearing on the preliminary injunction motion with a trial on the merits. NEAVS' counsel initially objected. After some discussion with counsel, however, the court announced its intention to consolidate. At that point, NEAVS' counsel did not raise any objection, nor did he request additional time. At the conclusion of the hearing, the court repeated that the motion had been consolidated with the trial on the merits. NEAVS' counsel remained silent, raising no objections to the court's statement.

In its oral statement of reasons for judgment in favor of the Company, the district court found nothing false or misleading about the Company's statements regarding the shareholders' resolution. This appeal followed.

For the reasons stated below, we affirm the judgment of the district court.

## II.

■ We turn first to NEAVS' contention that the applicable standard of review here should be no broader than that applied in reviewing a summary judgment where the evidence is viewed in the light most favorable to the party against whom judgment was entered. NEAVS asserts that the district court improperly invoked Rule 65(a)(2) since its counsel had objected to a consolidation and assented only to a hearing in the nature of cross-motions for summary judgment or a motion for judgment on the pleadings. According to NEAVS, we should review this case as though it were an appeal from an order granting a motion for summary judgment, rather than as an appeal from a judgment after a trial on the merits.[2] Fed.R.Civ.P. 65(a)(2) provides that:

---

2. Both parties agree that if the district court *properly* invoked Rule 65(a)(2), so that the pre-

liminary injunction hearing was consolidated with the trial on the merits, the district court's

"[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

Courts may order consolidation only after " 'clear and unambiguous notice ... either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.' " *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981) (citations omitted). We recently have held that, once a party is clearly advised of the court's intention to proceed under Rule 65(a)(2), unless a party raises an immediate objection, it may not be heard to complain later. *K–Mart Corp. v. Oriental Plaza Inc.,* 875 F.2d 907, 913–14 (1st Cir.1989).

In the instant case, the Company, in its papers opposing NEAVS' motion for a preliminary injunction, filed April 19, initially requested the district court to invoke Rule 65(a)(2). At the commencement of the trial, Judge Woodlock asked counsel for NEAVS whether he had an objection to the "suggestion ... that we ought to conflate this hearing into a trial on the merits." NEAVS' counsel replied, "Yes, I do, Judge." Thereafter, NEAVS' counsel suggested alternatives to the Rule 65(a)(2) procedure, namely, something "in the nature of a motion for judgment on the pleadings or a cross motion for summary judgment or something like that." During this discussion with counsel, in which the court pointed out that the case is "either one way or the other", the court ultimately decided to proceed under Rule 65(a)(2). It announced that "whatever I do today—unless you have additional materials or something that you want to bring to my attention—is likely to dispose of the matter in this Court." At this point, NEAVS' counsel

stated "[t]hen I don't have an objection." The court then asked the Company's counsel whether he had any objection. He replied: "No, Your Honor. I agree that whatever you do ought to dispose of the matter for the District Court." The trial proceeded accordingly. At the conclusion of the trial, Judge Woodlock repeated that the matter had been consolidated under Rule 65(a)(2).[3] Again, NEAVS did not object to the court's determining the matter on the merits nor did it request leave to produce additional evidence.

In view of NEAVS' failure to object to the district court's "clear and unambiguous" statement of its intention to consolidate, and its failure to request more time, we hold that NEAVS "cannot now rightfully complain about the court's order." *K–Mart, supra,* 875 F.2d at 913. As we recently have emphasized,

" '[w]hen a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles.' "

*Id.* (quoting *Reilly v. United States,* 863 F.2d 149, 160 (1st Cir.1988)).

We hold that the district court properly consolidated the motion for a preliminary injunction with the trial on the merits pursuant to Rule 65(a)(2). Accordingly, we review this case as an appeal from an order entered pursuant to Rule 65(a)(2), rather than as an appeal from an order granting a motion for summary judgment.

### III.

(A) *Correct Legal Standard Under The Federal Securities Laws*

We turn next to NEAVS' assertion that the district court applied the wrong legal

---

findings are reviewable under the "clearly erroneous" standard. Fed.R.Civ.P. 52(a).

3. The district court stated that:
   "We have—because of the nature of this lawsuit—agreement that this hearing may be considered consolidated with the trial on the merits. It can be because all of the material upon which a judgment should be made has been presented to me and it's essentially material in writing. Accordingly, this statement will be treated as—my reasons will be treated as a set of findings and conclusions as required by Federal Rule of Civil Procedure 52."

standard to determine the sufficiency of the Company's statements in its proxy materials regarding the proposed resolution, pursuant to Rule 14a–9 and 15 U.S.C. § 78n(a).

Rather than considering, as the district court did, whether the proxy materials provided the shareholders with a proper basis for "understanding the dispute, the relevant issues in the dispute, and the contentions of the opposing parties", NEAVS contends that federal law required the district court to determine the truthfulness of the Company's statements regarding the resolution, that is, whether the preamble to the resolution was in fact "false throughout"; whether the Company uses "live animal tissue", as opposed to the whole live dog; and whether NEAVS ever attempted to damage the Company's reputation. We disagree.

Section 14(a) of the 1934 Act and Rule 14a–9 promulgated thereunder proscribes the issuance of a proxy solicitation statement "which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading...." In *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976), the Supreme Court defined the standard of materiality in the context of Rule 14a–9: "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." The Court further explained that to fulfill the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

█ We recently formulated the following analysis in determining whether a proxy statement complies with the 1934 Act:

"'As far as proxy statements are concerned ... the federal purpose is served if the statement fully and fairly sets out such relevant and material facts as would enable a reasonably prudent stockholder to make an intelligent decision as to whether to grant the requested proxy or as to how he should vote on the questions mentioned in the proxy statement'".

*Lessler v. Little,* 857 F.2d 866, 875 (1st Cir.1988) (quoting *Golub v. PPD Corp.,* 576 F.2d 759, 764 (8th Cir.1978)), *cert. denied,* 109 S.Ct. 1130 (1989). As the Second Circuit aptly put it:

"Rare indeed is the proxy statement whose language could not be improved upon by a judicial craftsman sitting in the serenity of his chambers. This is particularly so where the statement is prepared in the 'hurly-burly' of a contested election. '[N]ot every corporate counsel is a Benjamin Cardozo ...' and nitpicking should not become the name of the game.

.    .    .    .    .

*Fair accuracy, not perfection, is the appropriate standard."*

*Kennecott Copper Corp. v. Curtiss–Wright Corp.,* 584 F.2d 1195, 1200 (2d Cir. 1978) (Van Graafeiland, J.) (emphasis added) (citations omitted); *see also Richland v. Crandall,* 262 F.Supp. 538, 554 (S.D.N.Y. 1967) ("corporations are not required to address their stockholders as if they were children in kindergarten"). In short, federal law is satisfied as long as the proxy materials fully and fairly set forth the relevant and material facts from which a reasonable shareholder may draw his own conclusions as to how to vote.

With these principles in mind, we hold that the district court applied the correct standard to determine the sufficiency of the Company's statements in its proxy materials under the federal securities laws. The district court applied the *TSC Industries* standard of materiality and found that "the material that is objected to by the plaintiffs here is not such as to mislead or deprive the reader of the proxy information of the basis for understanding the dispute, the relevant issues in the dispute, and the

contentions of the opposing parties." The district court adopted as its guiding principle the following:

"[C]ourts do not sit in proxy disputes as professors of English literature engaged in an exercise of textural [sic] deconstruction. [Instead], I look at the presentations of the parties with a view toward determining whether the substance of the proxy statement rather than its particular wording or its editorial stylistics accurately and fairly portrays the disputes."

In entering judgment for the Company, the court concluded that:

"[W]hat is presented here is vigorous —perhaps, in part, clumsy—language which nevertheless communicates to the reader who follows through the whole document sufficient information for that reader to make his own judgment about whether or not to vote in favor or against the resolution that has been presented by the plaintiffs. The plaintiffs are entitled to no more than that. That is, that the issue is presented in all its vitality to the shareholders."

The district court, in analyzing NEAVS' claims, clearly had in mind the correct standard as set forth in *TSC Industries* and *Lessler*. It correctly viewed the proxy solicitation materials and the particular statements made therein in the context of the total mix of information provided in all the materials. *TSC Industries, supra,* 426 U.S. at 449; *Lessler, supra,* 857 F.2d at 875–76.

We hold that the district court applied the correct standard under the federal securities laws.

### (B) *Application Of Correct Legal Standard To The Facts*

■ We turn next to the question whether the district court erred in holding that the Company's proxy materials did not violate the federal securities laws. The issue of materiality is "a mixed question of law and fact" whose determination "requires delicate assessments ... [that] are peculiarly ones for the trier of fact." *TSC Industries, supra,* 426 U.S. at 450. In this circuit, we review a mixed question "only for clear error in the absence of some showing that the court applied the wrong legal standard." *Pavlidis v. New England Patriots Football Club,* 737 F.2d 1227, 1231 (1st Cir.1984).

In its complaint and motion for a preliminary injunction, NEAVS alleged that three statements in the proxy materials concerning the proposed resolution were false and misleading, in violation of Rule 14a–9 and 15 U.S.C. § 78n(a). The district court, however, rejected NEAVS' claims, finding nothing false or misleading about the Company's proxy solicitation materials. First, the court found that the statement that the Board believed the resolution to be "false throughout", read in the context of the whole document, was merely a rejection of the "larger underpinnings of the plaintiff's views", rather than "a rejection of each fact contained in the resolution itself." Second, the court found that NEAVS' objections to the Company's references to "live animal tissue" cut "far too thin" since no reasonable shareholder would be mislead into thinking that the dispute did not involve the Company's use of live dogs. Finally, the court found that the Board's statement that "[o]nly the animal rights activists have attempted to damage the Company's image and reputation" was not misleading to the average shareholder. That shareholder, according to the court, "will draw his or her own conclusion about whether ... the company's image and reputation will be damaged by continuing the practice."

After carefully considering NEAVS' arguments, we are satisfied that the court did not commit clear error in finding nothing false or misleading about the Company's proxy materials. We agree with the court that "it appears ... that the management here has not stated a proposition quite the way the plaintiffs would like them to have stated it." But NEAVS has no grounds under federal law for complaining about the "wording and editorial presentation" of the proxy materials. *Lessler, supra,* 857 F.2d at 875; *see also Kohn v. American Metal Climax, Inc.,* 458 F.2d

255, 267 (3d Cir.) ("Reasonable latitude [in the area of proxy materials] is important if nit-picking is not to become the name of the game."), *cert. denied,* 409 U.S. 874 (1972).

We hold that the Company's proxy materials provide a sufficient basis for a reasonably prudent shareholder to make an intelligent decision as to how he should vote on the resolution. The proxy materials included the shareholders' resolution exactly as submitted. In the same proxy materials, the Board stated its reasons for opposing the resolution. The only issue is whether the facts were fairly and accurately presented to the shareholders. The court properly resolved this issue in favor of the Company, finding that the proxy statement "communicates to the reader who follows through the whole document sufficient information for that reader to make his own judgment about whether or not to vote in favor or against the resolution that has been presented by the plaintiffs." Such finding is not clearly erroneous.

In short, we hold that the district court properly concluded that there was nothing false or misleading about the Company's statements regarding the resolution.[4] The court's conclusion is not clearly erroneous. The proxy materials—which included the resolution in full—provided an adequate basis upon which reasonably intelligent shareholders could reach their own conclusions about the merits of the controversy.

### IV.

This brings us to NEAVS' final contention that the district court erred in refusing to strike the affidavit of Thomas R. Bremer, Vice–President and General Counsel of the Company. NEAVS asserts that the affidavit was neither sworn to upon personal knowledge nor was the affiant's personal knowledge apparent upon the face of the

affidavit. Alternatively, it asserts that certain paragraphs should have been stricken since they were either irrelevant, immaterial, or conclusory. Finally, NEAVS asserts that it is fair to assume that the affidavit improperly influenced the court.

In denying NEAVS' motion to strike, the court stated that it would "take [the Bremer materials] for what they're worth." We hold that such denial was within the court's discretion. *United Steelworkers of America v. Cyclops Corp.,* 860 F.2d 189, 203 (6th Cir.1988) (review of district court's decision in the context of a summary judgment motion limited to abuse of discretion); *Misabec Mercantile, Inc. v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.,* 853 F.2d 834, 841 (11th Cir.1988) (same). Moreover, since there is no indication that the court relied on the affidavit, any error, at most, was harmless. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2738 (2d ed. 1983) (erroneous admission of affidavit in the context of summary judgment motion does not require reversal of judgment if error is harmless).

### V.

To summarize:

As a threshold matter, we hold that the district court properly consolidated NEAVS' motion for a preliminary injunction with the trial on the merits. We therefore review this case as an appeal from an order entered pursuant to Rule 65(a)(2).

We hold that the district court applied the correct standard to determine the sufficiency of the Company's statements in its proxy materials regarding the proposed resolution, under Rule 14a–9 and 15 U.S.C. § 78n(a).

We also hold that the court did not err in concluding that there was nothing false or misleading about the Company's statements regarding the resolution.

We further hold that the court did not abuse its discretion in denying NEAVS'

---

**4.** NEAVS asserts that the "Company admitted that its proxy solicitation was never intended to be true", relying on a statement in a footnote to the Company's brief that the Board's opinions "are not, and do not purport to be, based on detailed factual analyses." This assertion is clearly meritless. It is beyond the stretch of any imagination to confuse lack of detailed factual analysis with lack of truth.

motion to strike the Bremer affidavit.[5]

AFFIRMED.

---

**5.** NEAVS relies heavily on *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985), which stated that, in the context of proxy solicitation cases, "a complaint may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* at

1067. *Goldman,* however, is inapposite since we are treating the instant case as an appeal from an order pursuant to Rule 65(a)(2), rather than as an appeal from an order granting a motion for summary judgment. The applicable standard of review here is the "clearly erroneous" test.

