United States Court of Appeals
For the First Circuit


No. 98-1634

JOHN J. LENNON,

Plaintiff, Appellant,

v.

ROBERT RUBIN, SECRETARY OF THE TREASURY,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]
[Hon. William G. Young, U.S. District Judge]


Before

Boudin, Circuit Judge,
Gibson, Senior Circuit Judge,
and Lynch, Circuit Judge.



Edward L. Hoban for appellant.
Rayford A. Farquhar, Assistant U.S. Attorney, with whom
Donald K. Stern, U.S. Attorney, was on brief, for appellee. 



February 3, 1999


LYNCH, Circuit Judge. John J. Lennon filed an action
asserting that his employer, the Bureau of Alcohol, Tobacco, and
Firearms ("ATF") in the Department of the Treasury, retaliated
against him in violation of the Age Discrimination in Employment
Act ("ADEA") and Title VII for filing age discrimination claims,
discriminated against him in violation of Title VII on the basis
of his status as a white male, and violated the Privacy Act
through prohibited recordkeeping and disclosure of information. 
Lennon appeals from Judge Young's dismissal of his retaliation
claims and Judge Lindsay's grant of summary judgment to the
defendant on Lennon's remaining claims. We affirm.
We outline the most salient facts only briefly. 
Lennon was a "GS-1811-12, Criminal Investigator, Special Agent"
at ATF. Prior to November 1992, he made a number of age-based
discrimination and retaliation complaints against Terence
McArdle, the "Special Agent in Charge" of the Boston ATF office
who was one of Lennon's supervisors. "On November 10, 1992,
while driving in an automobile with [an African-American ATF
agent], as the result of a near accident, Lennon made a
spontaneous remark that would be considered racially
derogatory." Amended Complaint 6. After the agent
complained, Lennon was suspended for three days.
On April 17, 1995, the ATF announced a vacancy for a
GS-1811-13 Senior Operations Officer, for which Lennon applied
and was placed on the "best qualified" list. McArdle ultimately
selected Joycelyn Christopher, an African-American woman, to
fill the position.
Lennon filed suit on October 16, 1996. After the
defendant moved to dismiss all of the retaliation claims, Judge
Young granted the motion, stating in a written order that the
Title VII retaliation counts failed to state a claim because
Lennon's underlying complaints of discrimination had been based
on age, not on race, color, sex or national origin. Both
parties subsequently moved for summary judgment on the remaining
claims. In a ruling from the bench, Judge Lindsay denied
Lennon's motion and granted summary judgment to the defendant on
the discrimination and Privacy Act claims, remarking with
respect to the former that "if the plaintiff could make a prima
facie case, he is unable to establish a triable issue[] that the
. . . nondiscriminatory reason[] offered by the government [is]
pretext."
We review the disposition of a motion to dismiss de
novo, taking the alleged facts to be true. See LaChapelle v.
Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998). We
likewise review the district court's grant of summary judgment
de novo, considering the facts in the light most favorable to
the nonmoving party. See Udo v. Tomes, 54 F.3d 9, 12 (1st Cir.
1995). However, we review the district court's decision as to
"the evidentiary materials it will consider in deciding a motion
for summary judgment" only for "a clear abuse of discretion." 
EEOC v. Green, 76 F.3d 19, 24 (1st Cir. 1996); see also Schubertv. Nissan Motor Corp., 148 F.3d 25, 29-30 (1st Cir. 1998). 
We reject Lennon's challenge to the district court's
dismissal of his Title VII claims for retaliation based on age
discrimination complaints. Lennon grounds his argument that
Title VII covers age-related retaliation complaints on the
language of 42 U.S.C. 2000e-16(c), which protects employees of
the federal government. That section states:
Within 90 days of receipt of notice of final action
taken by a department, agency, or unit referred to in
subsection (a) of this section, or by the Equal
Employment Opportunity Commission upon an appeal from
a decision or order of such department, agency, or
unit on a complaint of discrimination based on race,
color, religion, sex or national origin, brought
pursuant to subsection (a) of this section, Executive
Order 11478 or any succeeding Executive orders, or
after one hundred and eighty days from the filing of
the initial charge . . . , an employee . . . , if
aggrieved by the final disposition of his complaint,
or by the failure to take final action on his
complaint, may file a civil action as provided in
section 2000e-5 of this title . . . .

Lennon notes that Executive Order 11478 has been amended to
prohibit agencies from discrimination based on age and claims
that this prohibition is incorporated into Title VII through the
reference to the Executive Order. 
Lennon's argument founders on the plain language of
the statute. The provision on which Lennon relies specifically
states that the complaint of discrimination must be "based on
race, color, religion, sex or national origin." Executive Order
11478 is merely one example of the various prohibitions on
executive branch discrimination that such a complaint may be
"brought pursuant to." 42 U.S.C. 2000e-16(c); see also id. 
2000e-16(a) (stating that federal employment "shall be made free
from any discrimination based on race, color, religion, sex, or
national origin"); cf. Fears v. Catlin, 377 F. Supp. 291, 293
(D. Colo. 1974) (noting that Executive Order 11478 was enacted
in 1969 and that "it appears that 2000e-16(c) was meant to
cover claims that arose prior to the enactment of [Title VII's
section on federal employees]"). The fact that the Executive
Order forbids age discrimination as well as race and sex
discrimination does not expand the categories on which a
complaint may be based or the reach of Title VII.
Further, Lennon's construction would render
superfluous the ADEA's prohibition on age discrimination against
federal government employees. See 29 U.S.C. 633a; see alsoLavery v. Marsh, 918 F.2d 1022, 1025 (1st Cir. 1990) ("[T]he
ADEA amendment prohibiting federal-sector age discrimination was
patterned after 42 U.S.C. section 2000e-16(a), (b), the
amendments to Title VII extending that statute's protection to
federal employees."). Accordingly, since Lennon's previous
complaints related to age rather than to a category protected
under Title VII, his retaliation claims are not cognizable under
Title VII. 
Lennon also challenges the district court's dismissal
of his claim of retaliation in violation of the ADEA. We are
hampered in our review of this dismissal by the fact that
neither Lennon nor the defendant ever identifies the basis given
by the court for the ruling. Lennon, without record support,
states that the court's ruling was based on an interpretation of
the relevant statute; the government's motion to dismiss
suggests it was based on the facts alleged. A transcript of the
judge's ruling from the bench has not been provided by the
parties and does not appear in the record transferred from the
district court (most likely because no one ordered a
transcription of the proceedings). "It is appellants'
responsibility to provide the court with intelligible briefs and
appendices sufficient to support their points on appeal, failing
which the court in its discretion . . . may scrutinize the
merits of the case insofar as the record permits, or may dismiss
the appeal if the absence of a [record] thwarts intelligent
review. Accordingly, . . . wherever material uncertainties
result from an incomplete or indecipherable record and impede or
affect our decision, we resolve such uncertainties against
appellants." Credit Francais International, S.A. v. Bio-Vita,
Ltd., 78 F.3d 698, 700-01 (1st Cir. 1996) (citations and
internal quotation marks omitted). Lennon has not adequately
provided a record and his discussion of this claim is a cursory
one (including no analysis of the statute that apparently needs
to be interpreted and consisting of an assertion that he has
established a prima facie case and a citation to an ADEA case
involving a federal employee that did not analyze 29 U.S.C.
633a, the relevant ADEA section). See generally United Statesv. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough
merely to mention a possible argument in the most skeletal way,
leaving the court to do counsel's work, create the ossature for
the argument, and put flesh on its bones."). We decline to
disturb the district court's ruling.
We also uphold the district court's grant of summary
judgment on Lennon's Title VII race and sex discrimination
claims. As an initial matter, we find no abuse of discretion in
the district court's denial of Lennon's motion to strike the
declaration of Daniel M. Hartnett. That declaration concerned
which ATF employee had official responsibility to fill the
Senior Operations Officer position that Lennon claims he was
illegally denied. The motion to strike was based on an alleged
lack of personal knowledge by the declarant and on the
contention that the declaration drew a legal conclusion. 
However, the district court could reasonably have found that
Hartnett, former Deputy Director and Associate Director of Law
Enforcement at ATF, was competent to discuss the existence and
effect of various ATF orders that were issued during his tenure. 
In any event, eliminating Hartnett's declaration from
consideration in connection with the summary judgment motions
would not make a difference in the outcome. See New England
Anti-Vivisection Soc'y, Inc. v. United States Surgical Corp.,
889 F.2d 1198, 1204 (1st Cir. 1990). Lennon focuses on the
wrong question. He focuses on the selecting authority, argues
that through the mechanical operation of various ATF orders
there was no delegation of selecting authority for the position
at issue for a period of approximately four years, and concludes
that "[t]he penalty for not being completely faithful to you own
plan [sic] is you lose." But Lennon never contests the fact
that an ATF employee named Terence McArdle actually chose an
African-American woman, Joycelyn Christopher, over Lennon for
the operations position, or that the ATF enforced McArdle's
choice. Whether McArdle lost his official authorization is not
determinative of whether the actual selection was discriminatory
on the basis of race or sex, and does not itself invalidate the
defendant's articulation of a "legitimate, nondiscriminatory
reason" for the employment action. Udo, 54 F.3d at 12 (internal
quotation marks omitted).
Defendant did indeed articulate such a
nondiscriminatory reason (we bypass whether Lennon adequately
established a prima facie case of race and sex discrimination). 
Defendant presented evidence that the Senior Operations Officer
position requires, inter alia, an ability to work well with
others, to exercise discretion, tact, and diplomacy, and to
resolve conflicts. Defendant also presented evidence that,
while Christopher (the person selected) excelled in these areas
and had successfully performed some of the required functions,
Lennon had difficulty working with others, was not tactful, and
voiced his opinions without restraint. Defendant documented a
number of specific incidents to back up these assessments,
including one in which Lennon used a racially derogatory term in
front of an African-American ATF agent with whom he was working.
We have carefully examined all of the evidence
presented by Lennon, including the evidence that Lennon claims
was not considered by the district court, and we agree with the
district court's conclusion that Lennon did not counter the
defendant's articulated reason by "introduc[ing] sufficient
evidence . . . (1) that the employer's articulated reason for
[its treatment of] the plaintiff is a pretext, and (2) that the
true reason is discriminatory." Mulero-Rodriguez v. Ponte,
Inc., 98 F.3d 670, 674 (1st Cir. 1996) (emphasis added); see
also Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12-13 (1st
Cir. 1998). Taken most favorably to Lennon, some of the
evidence he presented to the district court might raise a
suggestion of pretext, but a reasonable factfinder could not
make a finding of discriminatory animus. See Fisher v. Vassar
College, 114 F.3d 1332, 1337 (2d Cir. 1997) (en banc)
("Individual decision-makers may intentionally dissemble in
order to hide a reason that is non-discriminatory but unbecoming
or small-minded, such as back-scratching, log-rolling, horse-
trading, institutional politics, envy, nepotism, spite, or
personal hostility."), cert. denied, 118 S. Ct. 851 (1998). 
The district court also correctly granted summary
judgment on Lennon's claim of improper disclosure of records in
violation of the Privacy Act. Lennon came forward with a memo
from one M.J. Wilkins, an employee in the ATF Employee and Labor
Relations Branch, stating that she was forwarding a package of
materials relating to Lennon to the "ATF EEO Task Force," a
group that included individuals from outside the agency. 
However, Wilkins testified that she actually gave the package
only to Marjorie Kornegay, the ATF's Assistant Director for
Equal Employment Opportunity Programs and a member of the Task
Force, and Kornegay declared that she never gave the package to
the other Task Force members and that the Task Force never
reviewed any material relating to Lennon. See 5 U.S.C. 
552a(b)(1). Lennon weakly responds that whether the file was
actually reviewed by the Task Force "is the question of fact
that the plaintiff wants decided by a fact finder, not an
affidavit," and that the question "cannot be decided by some
sort of statement from Kornegay." These arguments misapprehend
Lennon's burden at the summary judgment stage, where "[b]rash
conjecture, coupled with earnest hope that something concrete
will eventually materialize, is insufficient." Dow v. United
Bhd. of Carpenters & Joiners, 1 F.3d 56, 58 (1st Cir. 1993); see
also Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.
1991) ("Genuine issues of material fact are not the stuff of an
opposing party's dreams. On issues where the nonmovant bears
the ultimate burden of proof, he must present definite,
competent evidence to rebut the motion."). On the evidence
presented, no reasonable factfinder could find that there was an
impermissible disclosure.
Finally, our de novo review discloses no error in the
district court's grant of summary judgment for the defendant on
Lennon's Privacy Act claim that the defendant intentionally or
willfully maintained illegal systems of records that had an
adverse effect on him. See 5 U.S.C. 552a(g)(1), (4). We
pause only to note that the district court did not abuse its
discretion in failing to strike Exhibits 14 and 15 to
defendant's statement of undisputed material facts, which
consisted of charts listing and describing each allegedly
illegally maintained record and citing a source of authority for
the maintenance of each record. Lennon contends that these
exhibits were not authenticated and do not fall into the class
of materials identified in Federal Rule of Civil Procedure 56. 
However, since all but one of the records listed and described
in the exhibits were separately reproduced elsewhere in
defendant's submission, and since the remainder of the exhibits
consists of citations to and quotations from legal authority,
the district court was entitled to consider the exhibits, which
were referenced in defendant's memoranda of law, as legal
argument not subject to strictures on evidentiary submissions. 
We have considered all of Lennon's properly presented
arguments and find them without merit. Accordingly, the
judgment of the district court is affirmed.