**The HIBERNIA SAVINGS BANK, Plaintiff, Appellant,**

v.

**Robert J. BALLARINO, William F. French, Defendants, Appellees.**

No. 89–1431.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1989.

Decided Dec. 11, 1989.

Joel M. Sowalsky, with whom Michael T. Putziger, Anne H. Stossel, and Roche, Carens & DeGiacomo, Boston, Mass., was on brief for plaintiff, appellant.

John B. Miller, with whom Daniel J. Kelly and Gadsby & Hannah, Boston, Mass., was on brief for defendants, appellees.

Before TORRUELLA, Circuit Judge, ALDRICH and GIBSON,[*] Senior Circuit Judges.

TORRUELLA, Circuit Judge.

The Hibernia Savings Bank ("HSB") brings this action appealing from a decision granting summary judgment. At issue are the timeliness and actual disclosure of information concerning shares of HSB stock purchased by defendants Robert Ballarino and William French. Before reaching the facts, we review some statutory background.

## STATUTORY BACKGROUND

The Securities Exchange Act of 1934, 15 U.S.C. § 78l(i), vests the Federal Deposit Insurance Corporation ("FDIC") with the authority to promulgate regulations for banks that are substantially similar to the Securities and Exchange Commission's regulations for companies dealing their shares on stock exchanges. FDIC regulation 12 C.F.R. § 335.401(a) requires that

> [a]ny person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a bank of a class which is registered under section 12 of the Act ... is directly or indirectly the beneficial owner of more than five (5) percent of such class shall, within 10 days after such acquisition, send to the bank ... and to each exchange where the security is traded, and file with the FDIC

a statement containing the information required by Form F–11.

Form F–11 requires a description of the identity of the filing party, the number of shares owned, the source of the funds used to purchase the shares, and the purpose of the acquisition. 12 C.F.R. § 335.407.

## FACTS

Appellees Ballarino and French were stockholders of HSB. On October 26, 1988, they filed with the FDIC a Form F–11 disclosing that they owned 5.37% of HSB stock; that they purchased HSB stock as an investment; and that they reserved the right to acquire additional shares and to propose any future "extraordinary transactions," such as mergers, tender offers or other business combinations. On December 23, 1988, they amended their Form F–11 disclosing equitable ownership of 6.4%. On January 31, 1989, they filed a second amendment disclosing how they financed their ownership and declaring that they owned 6.7%. On April 11, 1989 they amended a third time, disclosing that $67,400 of funds advanced from a loan in December, 1988 were used to purchase HSB stock.

On January 24, 1989, HSB filed this action in the U.S. District Court for the District of Massachusetts alleging both that the acquisition statement was incomplete and untimely filed.[1] Moreover, HSB alleged that these deficiencies constituted a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* HSB requested that the district court declare the appellees in violation of disclosure requirements; enjoin the appellees from voting the shares purchased during the alleged violations; enjoin the appellees from communicating with other shareholders until they have complied; and compel the appellees to sell all shares of stock purchased and to disgorge any profits made from that sale.[2] Instead, the district

---

[*] Of the Eighth Circuit, sitting by designation.

[1]. All alleged deficiencies were subsequently cured by the January 31, 1989 filing.

[2]. The declaratory judgment and the disgorgement requests were pursuant to 12 C.F.R. §§ 335.401(a) and 335.407 and 15 U.S.C.

§ 78j(b); the requests for sterilization of shares were made pursuant to 12 C.F.R. § 335.401(a) and/or in the alternative § 335.407.

court granted Ballarino and French summary judgment. We now affirm the decision of the district court for the reasons stated below.

## DISCUSSION

In order to reverse the district court's dismissal of requests for injunctive relief, HSB must "demonstrate that there was no reasonable basis for the District Judge's decision." *United States v. W.T. Grant Co.*, 345 U.S. 629, 634, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). Similarly, appellate courts leave decisions concerning the declaratory judgment remedy to the district court's sound discretion. *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). In looking to precedent and legislative history, we find the district court opinion supererogant in explaining why HSB's allegations have no merit.

Congress enacted the Williams Act to provide for adequate disclosure of information to stockholders and investors, in connection with cash tender offers and other acquisitions of large blocks of stock in publicly held companies. H.R.Rep. No. 1711, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2811, 2812–14. Section 13(d) of the Act, which is analogous to Form F–11, was enacted to deal with after-the-fact disclosures of large acquisitions of stock within a short time period. *Id.* at 2818.

> The underlying purpose of Section 13(d) is to provide investors and the market in general with accurate information about potential changes in corporate control, so as to permit the market to value the shares accordingly, but without using the medium of federal regulation to tip the balance in favor of either management, or those attempting a change in corporate control.

*Ludlow Corp. v. Tyco Laboratories Inc.*, 529 F.Supp. 62, 65 (D.Mass.1981) (citing *General Aircraft Corp. v. Lambert*, 556 F.2d 90, 94 (1st Cir.1977). We will not permit HSB to undermine this purpose and tip the balance of corporate control in its favor.

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), decides the outcome of the present action. In *Rondeau*, a securities issuer brought a civil action under Section 13(d) requesting, like HSB, that the individual be enjoined from voting or pledging his stock in the corporation, and from acquiring additional shares, and moving for divestiture of the stock already owned. The issuer claimed that the individual had failed to make a timely disclosure of his acquisition of more than 5% of the issuer's stock as required by 13(d), and that this constituted a scheme to defraud the corporation and its stockholders. The disclosure schedule was eventually filed three months after the statutory deadline, and the purchaser alleged that the late filing was due to his "lack of familiarity with the securities laws." *Id.* at 55, 95 S.Ct. at 2074. The Court held that a showing of irreparable harm, in accordance with traditional principles of equity, was necessary before a private litigant could obtain injunctive relief under 13(d). *Id.* at 58, 95 S.Ct. at 2075–76. The Court commented that Congress intended the Williams Act to be even-handed as between incumbent management and its challenger, and not a "weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts." *Id.* at 58–59, 95 S.Ct. at 2075–76; (citations omitted). Declining to find irreparable harm, the Supreme Court stated:

> The short of the matter is that none of the evils to which the Williams Act was directed has occurred or is threatened in this case. Petitioner has not attempted to obtain control of Respondent, either by a cash tender offer or any other device. Moreover, he has now filed the proper Schedule 13D, and there has been no suggestion that he will fail to comply with the Act's requirement of reporting any material changes in the information contained therein. [Citations omitted]. On this record there is no likelihood that Respondent's shareholders will be disadvantaged should Petitioner make the tender offer, or that Respondent will be unable to adequately place its case be-

fore them should a contest for control develop. Thus, the usual basis for injunctive relief, "that there exists some recognizable danger of recurrent violation," is not present here. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953).

*Id.* 422 U.S. at 59, 95 S.Ct. at 2076,

Like the Supreme Court in *Rondeau*, the district court in this case reasoned that injunctive relief in connection with Form F–11 violations is limited to situations where plaintiff meets the traditional equitable requirements of irreparable harm and likelihood of success on the merits. *See also General Aircraft v. Lampert*, 556 F.2d 90, 96 (1st Cir.1977).[3] Such relief is not available where the alleged violator has complied with the notice requirements. Curing any alleged defects precludes a showing of irreparable harm.

We need go no further.[4] The appellee appropriately labels the appellant's claims a fishing expedition. HSB's actions seem indeed a piscatorial attempt to entrench management's position, stall any further acquisition of its stock by appellants, and use discovery rules to find out just what, if anything, Ballarino and French are up to. Courts have traditionally prevented plaintiffs from misusing the discovery process to discern the motives of potential adversaries. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975); *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir.1987). We do so now.

*Affirmed.*

---

**3.** Furthermore, we stated in *Lampert* that the sterilization of shares legally acquired is not available even if the 13(d) disclosure requirements are not met. 556 F.2d at 97.

**4.** The appellant's insider trading claim is so deficient that it warrants dismissal on its face. Plaintiff has not alleged the requisite elements, e.g., scienter, reliance, causation, etc. Failure to prove, much less allege, any one of these elements warrants dismissal of the appellant's claim. *See Kennedy v. Josephthal & Co., Inc.*, 635 F.Supp. 399, 401 (D.Mass.1985).